UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID J. TATARA,

     Petitioner,

v.                               Case No.: 5:17-cv-39-Oc-02PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS AND ATTORNEY
GENERAL, STATE OF FLORIDA,

     Respondents.

_____/

## ORDER

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Docs. 1, 2). At the Court's direction, Respondents responded to Petitioner's petition and filed relevant portions of the state court record. (Doc. 11). Petitioner filed a reply in support of his petition. (Doc. 12). Thus, this matter is ripe for review.

The Court has reviewed the entire record. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Case in the United States District Courts, Rule 8(a). Upon consideration, the Court concludes that the petition is due to be denied.

## I.     BACKGROUND

On December 17, 2008, Blake Rupe, a 15-month old child, died. The Medical Examiner ruled the cause of death to be blunt force trauma and the manner of death

to be homicide. Law enforcement arrested Petitioner on March 4, 2009 and the State of Florida charged him by Indictment with two counts of child abuse (counts I and II); one count of aggravated child abuse (count III); and one count of murder in the first degree - felony murder (count IV). Count IV of the Indictment (first-degree felony murder) read:

> the Grand Jurors, under oath, further present that the said DAVID J. TATARA, in the County of Lake and the State of Florida, on or about the 15th day of December in the year of Our Lord two thousand-eight, did unlawfully, while engaged in the perpetration of a certain felony, to-wit: Aggravated Child Abuse, kill BLAKE RUPE, a human being who at the time was under the age of 18, by inflicting blunt trauma to his head, thereby causing death, in violation of Section 782.04(1)(a)2, Florida Statutes;

Count III of the Indictment (aggravated child abuse) read:

> the Grand Jurors aforesaid, under oath, further present that the said DAVID J. TATARA, in the County of Lake and the State of Florida, on or about the 15th day of December 2008, did maliciously punish a child named BLAKE RUPE, during which DAVID J. TATARA willfully committed child abuse upon him by inflicting severe trauma to his head, thereby causing BLAKE RUPE to suffer great bodily harm, in violation of Sections 827.03(2)(b) and (c), Florida Statutes.

Prior to trial, counts I and II, the child abuse counts, were severed.

Petitioner proceeded to trial on counts III and IV. At trial, Brian Lockwood, a paramedic, testified he arrived at the home and found Blake Rupe unconscious. In examining the victim, he looked for outward signs of trauma but did not find anything. Dr. Edgardo Rodriguez, a physician at Florida Waterman Hospital, testified he treated Blake in the emergency room. A CT exam showed severe swelling of the brain and evidence of a possible fracture or broken skull. Blake was in very critical condition and

in full cardiac arrest. Blake was moved to Arnold Palmer Hospital due to the level of care he required. He later died.

Dr. Barbara Wolf, Chief Medical Examiner for the Fifth Judicial Circuit, performed an autopsy on Blake Rupe. She testified that Blake had an external injury on the back of his head which was an abrasion or scrape, a small laceration on the tip of his tongue and one of his front teeth was missing. Dr. Wolf testified the autopsy revealed Blake had a skull fracture in the bottom area of his skull, in part of the occipital bone. Dr. Wolf noted this area was not prone to fracture. She also found some bruising underneath the scalp on top of the skull, i.e., a subgaleal hemorrhage.[1] The autopsy revealed Blake's brain was very swollen and appeared to be bulging. She determined the child's skull sutures were widened and concluded this was the "first finding, or the big finding." (Doc. 11-4 at 32-33). Dr. Wolf also found Blake had a small subdural hematoma and bleeding on the surface of the brain, i.e., a subarachnoid hemorrhage. Dr. Wolf also found bleeding on both sides of the optic nerve as well as retinal hemorrhages. Based on her findings, Dr. Wolf concluded Blake Rupe died of blunt head trauma and determined the manner of death was homicide. (Doc. 11-4 at 48). On cross-examination, Dr. Wolf admitted she could not determine whether there was more than one blow to the child and stated "when injuries are localized in one area, there's no way I can tell if someone, for example, was hit in the same area once or multiple times." (Doc. 11-4 at 68).

---

[1] The fracture was close to the external abrasion, but not directly under it. (Doc. 11-4 at 28-29).

Towards the end of the State's case in chief, defense counsel moved for a judgment of acquittal and to dismiss. Citing *Brooks v. State*, 918 So. 2d 181 (Fla. 2005) and *Sturdivant v. State*, 94 So. 3d 434 (Fla. 2012), counsel argued the "merger doctrine" did not allow the Defendant to be found guilty of first-degree murder because you must have two or more blows or multiple acts of child abuse. Counsel argued the evidence in this case did not establish there was more than one blow to the child. The court took the motions under advisement and reserved ruling.

During the trial, the State and Defense discussed jury instructions. The trial court stated: "[H]ere's my thoughts. I read them [*Brooks* and *Sturdivant*] pretty carefully, and, in my opinion, if the Supreme Court doesn't reverse themselves, I think we can't go with the felony murder." (Doc. 11-8 at 52). After further discussion, the trial court stated: "Unless there's a change in the law, you know, before we give it to the jury, you know, I'm inclined to grant the JOA on that." (Doc. 11-8 at 54).

After the close of evidence, defense counsel renewed his motion for judgment of acquittal. Citing *Brooks*, defense counsel argued the evidence did not support a finding that there was more than one blow and, therefore, the charge of felony murder could not stand. The trial court ruled: "At this time I'm going to grant the Motion for Judgment of Acquittal on the first degree murder. The jury will be able to consider second degree murder and child abuse." After further discussion, the court determined that second degree murder and the aggravated child abuse charges merged. The court stated:

> Here are my plans. I am going to instruct the jury ,that I have ruled that as a matter of law that they will not be considering first degree felony murder or aggravated child abuse, and that they should disregard any instructions or the reading of the indictment as to first degree felony murder and aggravated child abuse, and that they will only be able to consider second degree murder and the lessers of second degree murder.

(Doc. 11-9 at 82).

Before the case was submitted to the jury, the State filed a "dummy" information charging the Petitioner with one count of second-degree murder. Defense counsel objected and argued it was inappropriate and a sham. The trial court decided to send the "dummy" information back with the jury. (Doc. 11-10 at 60-62).

The jury found the Petitioner guilty of murder in the second degree. (Doc. 11-1 at 50). The court entered a judgment of not guilty as to count III - aggravated child abuse. The State entered an announcement of *nolle prosequi* as to counts I and II. The Court sentenced Petitioner to a term of natural life. (Doc. 11-1 at 56-59).

Petitioner appealed his judgment and sentence. Petitioner raised six grounds: (1) the trial court violated Petitioner's due process rights and procedural rules by allowing the State to file an Information and attempt to amend the indictment after the close of evidence; (2) the trial court reversibly erred in permitting Linda Pedicone to testify as an expert in child abuse; (3) the trial court improperly admitted evidence of victim's previous injuries; (4) the trial court reversibly erred in admitting evidence of prior bad acts; (5) the trial court reversibly erred in admitting Kathryn Tillman's testimony regarding a statement allegedly made by Petitioner; and (6) the trial court reversibly erred in denying Petitioner review of Department of Children and Families

records. (Doc. 11-10 at 96-152). The State filed an Answer Brief. (Docs. 11-10 at 154-72, 11-11 at 1-19). Petitioner filed a Reply Brief. (Doc. 11-1 at 21-36).

On February 15, 2013, Petitioner filed an unopposed motion to file supplemental brief, to exceed 50-page limit and to continue oral argument (Doc. 11-11 at 38-41) and a Supplemental Brief (Doc. 11-11 at 42-48). The Supplemental Brief contained one new ground: the trial court committed fundamental error by instructing the jury on the uncharged offense of second degree murder. The State filed a Supplemental Answer Brief. (Doc. 11-11 at 50-62). Petitioner filed a Supplemental Reply Brief. (Doc. 11-11 at 64-70).

On April 19, 2013, Petitioner's Joint Motion for Substitution of Counsel was granted. (Doc. 11-11 at 72-74). Petitioner's new counsel then filed a Motion for Leave to file Amended Initial Brief (Doc. 11-11 at 123-33) and an Amended Initial Brief (Doc. 11-11 at 76-121). The Amended Brief raised two grounds: (1) because the court granted Petitioner's motion for judgment of acquittal, any further proceedings on this indictment violated double jeopardy; and (2) the conviction violated Petitioner's due process rights because he was never charged with second degree murder. The Fifth District Court of Appeal ("Fifth DCA") denied the motion and struck the Amended Initial Brief. (Doc. 11-11 at 135).

Oral argument was held, *see* Doc. 11-11 at 157-82, and the Fifth DCA *per curiam* affirmed. (Doc. 11-11 at 137); *Tatara v. State*, 119 So.3d 1265 (Fla. 5th DCA 2013) (Table). Petitioner, through counsel, filed a motion for rehearing and motion for

written opinion (Doc. 11-11 at 139-82). The motion was denied on September 4, 2013, (Doc. 11-11 at 184) and Mandate issued on September 19, 2013 (Doc. 11-11 at 186).

On March 10, 2014, Petitioner, through counsel, filed a verified motion for postconviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Docs. 11-11 at 207-22; 11-12 at 1-58; 11-13 at 1-72). Petitioner raised four grounds: (1) counsel was ineffective for failing to object to the charge of second degree murder being submitted to the jury; (2) the conviction for second degree murder is void because it violates double jeopardy; (3) the conviction for second degree murder is void because it was entered in violation of the due process clause; and (4) he was entitled to discharge due to those errors. *Id.* The State responded in opposition. (Docs. 11-13 at 74-82; 11-14 at 1-76; 11-15 at 1-76; 11-16 at 1-68; 11-17 at 1-43; 11-18 at 1-37). Petitioner, through counsel, filed a reply in support of postconviction relief (Doc. 11-18 at 39-46). The court held an evidentiary hearing. (Doc. 11-20 at 68-101; 11-21 at 1-51). Following the hearing, Petitioner, through counsel, filed his argument after evidentiary hearing, (Docs. 11-19 at 21-79; Doc. 11-20 at 1-66), and the State filed a memorandum of law regarding Defendant's motion for postconviction relief (Docs. 11-18 at 48-54; 11-19 at 1-19). The state court denied the motion. (Doc. 11-21 at 53-69). Petitioner, through counsel, filed a motion for rehearing. (Doc. 11-21 at 71-79). The state court denied the motion. (Doc. 11-22 at 1-2). Petitioner appealed, (Doc. 11-22 at 4-52), the State filed an answer brief, (Doc. 11-22 at 54-78), and Petitioner filed a reply brief (Doc. 11-22 at 80-89). The Fifth DCA *per curiam* affirmed. (Doc. 11-22 at

91); *Tatara v. State*, 200 So. 3d 74 (Fla. 5th DCA 2016) (Table). Mandate issued on October 10, 2016. (Doc. 11-22 at 93).

While the Rule 3.850 motion was pending, Petitioner, through counsel, filed in the Fifth DCA a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel and/or petition for writ of habeas corpus to correct manifest injustice on July 31, 2014. (Doc. 11-22 at 95-229). The petition was denied. (Doc. 11-22 at 231). Petitioner filed a *pro se* motion for rehearing and in the alternative a request for written opinion. (Doc. 11-22 at 233-42). The motion was denied. (Doc. 11-22 at 244).

Also, while the Rule 3.850 motion was pending, Petitioner filed a *pro se* petition to invoke all writs jurisdiction on January 30, 2015. (Doc. 11-22 at 246-328). The Fifth DCA ordered the State to respond. (Doc. 11-22 at 330). The state moved to dismiss the petition. (Doc. 11-22 at 332-34). Petitioner replied. (Doc. 11-22 at 336-42). The petition was denied, and the motion to dismiss was denied as moot. (Doc. 11-22 at 344, 346).

## II.    LEGAL STANDARDS

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted on a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court finds that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2]

---

[2] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

*Id.* Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have to rebut the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief because his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner must "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir.

2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

Petitioner's burden to show *Strickland* prejudice is also high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## III. ANALYSIS

### A.    Ground Three[3]

Petitioner challenges the state court's denial of his Rule 3.850 claim alleging ineffective assistance of counsel. (Doc. 2 at 21-27). Petitioner claims that counsel failed to object to the submission of the second-degree murder charge to the jury. (*Id.*). Petitioner states that second-degree murder was not a necessary lesser included offense of first-degree felony murder, nor was it a permissive lesser included offense of first-

---

[3] For ease of review the claims in the Petition are being addressed in the order that they were presented in Petitioner's Rule 3.850 motion, as opposed to this instant Petition, because the state court's order denying that motion makes multiple internal references to its prior findings.

degree felony murder under the Indictment. Petitioner claims if his trial counsel objected, he would have either been acquitted outright, or could have the charge of manslaughter, the only remaining lesser included offense, submitted to the jury. Further, Petitioner states that the lack of an objection subjected his argument that he was convicted of a crime he was not properly charged of to the heightened standard of fundamental error.

Petitioner raised this ground in his Rule 3.850 motion. (Doc. 11-11 at 216-22; Doc. 11-12 at 1-3). The state court denied the claim:

> In his first issue, Defendant argues trial counsel was ineffective for failing to object to the charge of second-degree murder being submitted to the jury. During the course of the direct appeal, defense counsel admitted he was unaware of the holding in *Coicou v. State*, 39 So. 3d 237, 243 (Fla. 2010) in which the Florida Supreme Court held that second-degree murder was no longer a necessarily lesser included offense of first-degree felony murder. Citing the *Coicou* decision, Defendant asserts counsel had a duty to object because: (1) second-degree murder is not a necessary lesser-included offense of first-degree felony murder; and (2) the Indictment in this case does not sufficiently allege the element of a depraved mind to allow the jury to consider the charge as a permissive lesser included offense of second-degree murder. In considering whether count IV sufficiently alleges depraved mind element of second-degree murder, Defendant maintains only the language of count IV may be considered and concludes the State did not charge the crime of first-degree felony murder (count IV) in a manner encompassing a depraved mind.
>
> Defendant further maintains that the State's filing of the Information after the close of all the evidence further illustrates that the *mens rea* for second-degree murder was not alleged in the original Indictment. A comparison of the language contained in the original Indictment and the subsequent Information reveals the Information contained an additional *mens rea* element. He argues defense counsel's failure to object to this charge being submitted to the jury was not merely a matter of trial strategy.
>
> Defendant further argues defense counsel's failure to object to the second-degree murder charge being submitted to the jury prejudiced his

case both at the trial level and the appellate level. Defendant argues he was prejudiced by counsel's failure because there was a reasonable probability that if counsel had objected, the trial court would have found it inappropriate to submit the matter to the jury, thereby altering the outcome of the case. He maintains he would have been acquitted outright or the trial court would have submitted the lesser-included offense of manslaughter to the jury. Defendant also notes that counsel's failure to object to the submission of the charge was fatal to this issue on appeal.

The Defendant is correct, second-degree murder is not a necessarily included offense of first-degree felony murder. This Court, however, disagrees with the Defendant that second-degree murder is not a permissive lesser included offense under the facts of this case. Initially, this Court notes one of the purposes of an indictment or information "... is to fairly apprise the defendant of the offense with which he is charged." *Leeman v. State*, 357 So. 2d 703, 705 (Fla. 1978). As noted above, the Indictment charging the Defendant with first-degree felony murder stated that the Defendant: "did unlawfully, while engaged in the perpetration of a certain felony, to-wit: Aggravated Child Abuse, kill BLAKE RUPE." Thus, the indictment for count IV specifically incorporates the charge of aggravated child abuse into the count.

Aggravated child abuse is defined as occurring when a person: (1) commits aggravated battery on a child; (2) willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or (3) knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child. Section 827.03(l)(a), Florida Statutes (2007). The aggravated child abuse charge (count III) alleges the Defendant maliciously punished Blake Rupe which resulted in inflicting severe trauma to the child's head. Section 827.03(c) defines maliciously as "wrongfully, intentionally, and without legal excuse." Florida courts have equated depravity of mind required for second-degree murder with malice in the commonly understood sense of "ill will, hatred, spite, or evil intent." *Ramsey v. State*, 114 Fla. 766, 154 So. 855, 856 (1934); *Turner v. State*, 298 So. 2d 559, 560 (Fla. 3d DCA 1974); *Aquilera v. State*, 975 So. 2d 1270, 1273 (Fla. 3d DCA 2008); *Manuel v. State*, 344 So. 2d 1317, 1319 (Fla. 2d DCA 1977). The incorporation of the aggravated child abuse charge (count III) into the charge of felony murder (count IV*)* put the Defendant on notice he might have to defend against the permissive lesser included charge of second-degree murder. By utilizing the wording alleging the Defendant maliciously (intentionally, wrongfully and without legal excuse) punished Blake Rupe by inflicting severe trauma to his head, the Indictment sufficiently alleged the Defendant acted with ill will, hatred, spite or evil intent.

As an aside, this Court finds the evidence, particularly the testimony at the evidentiary hearing, demonstrates trial counsel was on notice he might have to defend against the lesser-included offense of second-degree murder. Trial counsel admitted he was unaware of the Florida Supreme Court's decision in *Coicou*. (EH at 31). Thus, it was his understanding, second-degree murder, depraved mind, was a necessarily included offense of felony murder. Trial counsel testified:

> Well, it is my understanding, and always has been, that if the court finds the evidence insufficient to sustain the verdict on the charged offense, then any necessarily included - - lesser- - included offenses, the court can instruct the jury on.

(EH at 25). He went on to state that after the judgment of acquittal was entered as to the felony murder charge, the court could instruct on any necessarily included offenses. The testimony continued:

> Q. At that point in this case, what do you believe the necessarily included lesser offenses were back then, not now?
>
> A. Well, I would imagine that I relied on the same source or resource that the judge had and that is the schedule of lesser-included offenses which at that time erroneously listed second-degree including depraved mind as a necessarily lesser-included offense.

(EH at 26). Thus, it is clear trial counsel, albeit erroneously, was on notice he might have to defend against a charge of second-degree murder, depraved mind. To the extent Defendant is arguing trial counsel was not on notice he might have to defend against a charge of second-degree murder, depraved mind, such argument must fail.

This Court is cognizant of the Fifth District Court of Appeal's decision in *Wilson v. State*, 749 So. 2d 516 (Fla. 5th DCA 1999). In that case, the appellate court relied on *Cave v. State*, 613 So. 2d 454 (Fla. 1993), in reaching its holding that a crime is not a lesser included offense unless the allegations contained in the count of the information charging the major crime alleges all of the elements necessary to prove the lesser included offense. The Fifth District Court of Appeal affirmed the trial court finding there were insufficient allegations in the particular count to authorize an instruction on the lesser included offense. *Wilson*, 749 So. 2d at 519. This Court finds *Wilson* is distinguishable. In this instance, count IV incorporates the charge of aggravated child abuse, i.e., count III. Because it incorporates the charge of aggravated child abuse in count IV, the elements for the crime of aggravated child abuse are part of count IV. As noted above, count III of the indictment alleges Defendant "maliciously punished" Blake Rupe. This is sufficient to establish the

*mens rea* of a depraved mind. Thus, this Court concludes that under the circumstances of this case, second-degree murder is a permissive lesser included offense of count IV. Therefore, Counsel was not deficient for failing to object to the charge being submitted to the jury.

(Doc. 11-21 at 61-65). Petitioner moved for rehearing arguing that the Court erred in finding second degree murder was a permissive lesser included offense by erroneously equating maliciously to depraved of mind. (Doc. 11-21 at 71-79). The state court denied the motion:

> The Defendant argues this Court erred in finding second degree murder was a permissive lesser included offense under the facts of this case. In addressing the Defendant's claims, this Court noted one of the purposes of an indictment or information is to fairly apprise the Defendant of the offense with which he is charged. *Leeman v. State,* 357 So. 2d 703, 705 (Fla. 1978). This Court found that the Indictment for Count IV specifically incorporated the charge of aggravated child abuse into the count. In examining the issue, this Court found the incorporation of the aggravated child abuse charge (Count III) into the charge of felony murder (Count IV) put the Defendant on notice he might have to defend against the permissive lesser included charge of second degree murder. By utilizing the wording alleging the Defendant maliciously (i.e., intentionally, wrongfully and without legal excuse) punished Blake Rupe by inflicting severe trauma to his head, the Indictment sufficiently alleged the Defendant acted with ill will, hatred, spite, or evil intent. This Court concluded that under the circumstances of this case, second degree murder is a permissive lesser included offense of count IV and, therefore, counsel was not deficient for failing to object to the charge being submitted to the jury. This Court affirms its original Order Denying the Defendant's Verified Motion for Post-Conviction Relief.

(Doc. 11-22 at 1-2). Petitioner appealed. (Doc. 11-22 at 28-33). The State filed an Answer Brief in opposition. (Doc. 11-22 at 54-78). Petitioner filed a Reply Brief. (Doc. 11-22 at 80-89). The Fifth DCA *per curiam* affirmed. (Doc. 11-22 at 91). Mandate issued on October 10, 2016. (Doc. 11-22 at 93).

In Florida, a trial court is required to instruct the jury on all necessary lesser included offenses. *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010). An offense is a necessary lesser included offense if the elements of the lesser offense are subsumed within the elements of the charged offense. *Sanders v. State*, 944 So. 2d 203 (Fla. 2006). In *Coicou v. State*, 39 So. 3d 237, 243 (Fla. 2010), the Florida Supreme Court held that second-degree murder is not a necessarily lesser included offense of first-degree felony murder. Permissive lesser-included offenses are those that may or may not be lesser included offenses depending on the pleadings and the evidence presented. *Wilcott v. State*, 509 So. 2d 261, 262 (Fla. 1987). An instruction on a permissive lesser included offense is precluded only where "there is a total lack of evidence of the lesser offense." *In re Use by Trial Courts of Standard Jury Instructions*, 431 So. 2d 594, 597 (Fla.), *modified*, 431 So. 2d 599 (Fla. 1981); *Amado v. State*, 585 So. 2d 282, 282–83 (Fla. 1991).

Florida Rule of Criminal Procedure 3.510 provides in pertinent part that the jury may convict the defendant of any offense that as a matter of law is a lesser included offense of the offense charged in the Indictment or Information and is supported by the evidence. Thus, a permissive lesser included offense exists, and therefore may be instructed if the evidence supports it, when 'the two offenses appear to be separate [on the face of the statutes], but the facts as alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been." *Sanders*, 944 So. 2d at 206. Even where the defense objects to the instruction of a lesser included offense on the grounds that it is not listed on the schedule of lesser included offenses, if the offense meets the requirements of a

16

permissive lesser included offense, the Florida Supreme Court has held that the instruction is proper and the State may have the instruction. *Williams v. State*, 957 So. 2d 595 (Fla. 2007). "Although the schedule 'is presumptively correct and complete,' … 'trial courts are charged with the responsibility to determine and properly instruct the jury on the prevailing law.'" *Id.* at 599–600 (citations omitted). The state district courts have reached the same holding. In *Ewing v. State*, 56 So. 3d 67 (Fla. 2d DCA 2011), the trial court had refused to instruct on a lesser offense because it was not listed as a lesser-included offense to the standard jury instruction. In reversing, the appellate court explained that the Florida Supreme Court has made clear that the published standard jury instructions are authorized but do not foreclose the parties from requesting additional instructions. *Id.* at 68–69. In *Benjamin v. State*, 462 So. 2d 110 (Fla. 5th DCA 1985), the court also held that an instruction on an offense as a category 2 lesser included offense may be proper even if it is not listed if the Information alleges the essential elements of the crime and the evidence adduced at trial supports the offense. *Id.* at 112.

Thus, under Florida law, even if the lesser offense is not listed in the schedule of lesser included offenses, an instruction for a lesser included offense is appropriate if the allegations of the greater offense contain all the elements of the lesser offense and the evidence at trial would support the lesser offense. *See Williams*, 957 So. 2d at 599-600; *Khianthalat v. State*, 974 So. 2d 359, 361 (Fla. 2008). Here, second-degree murder is a category two (permissive) lesser included offense of first-degree murder. *See* Fla. Std. Jury Instr. (Crim.) 7.3.

To the extent that the Fifth DCA affirmed the trial court's denial on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In so far as Petitioner takes issue with the reading of the second-degree murder generally, "[u]nlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "If there is no basis in the record for the instruction given, such error may raise to a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may be required." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting *McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1509 (11th Cir. 1990)).

In light of the state court's conclusion that an objection would not have been properly granted under state law, a conclusion to which this federal court must defer, Petitioner failed to show counsel performed deficiently by failing to object to the

---

[4] Where the state court's adjudication on the merits is unaccompanied by an explanation, the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

charge of second-degree murder being submitted to the jury. *See Erwin v. Sec'y, Dep't of Corr.*, 2013 WL 790983, at *34 (N.D. Fla. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 790942 (N.D. Fla. Mar. 4, 2013), *aff'd* 568 F. App'x 749 (11th Cir 2014). Here, the postconviction court found the facts alleged in the Indictment and the evidence presented at trial demonstrated that second degree murder was a proper lesser included offense under Florida law. Accordingly, Ground Three warrants no federal habeas corpus relief. *See* 28 U.S.C. § 2254(d)(1), (2).

### B.    Ground One

Petitioner states that his conviction for second-degree murder violates the prohibition against double jeopardy. (Doc. 2 at 13-19). Petitioner claims that the proceedings against him should have concluded the moment the trial court entered a judgment of acquittal. Further, Petitioner avers that once the state filed a new information it had the legal effect of a *nolle prosequi* of the original information and triggered double jeopardy. Petitioner states that the moment the state court acquitted him of the offenses charged in the Indictment, it should have freed him and prohibited him from being put in jeopardy by another prosecution of the same offense under a new Information.

Petitioner raised this ground in his Rule 3.850 motion. (Doc. 11-12 at 3-11). The state court denied this claim:

> In issue II, the Defendant argues that his conviction for second-degree murder is void because it violates the proscription against double jeopardy in two respects: (1) he was acquitted of the charges set forth in the original indictment, but the proceedings against him were not immediately concluded; and (2) after the court granted the judgment of

acquittal, the State filed an information charging him with the separate and new offense of second-degree murder. Crucial to Defendant's contention is his argument that the trial court acquitted him of both the first-degree felony murder and the aggravated child abuse charge. Based on this reasoning, he contends that any further proceedings violated double jeopardy.

As stated above, Defendant contends he was acquitted of the charges in the original indictment and the proceedings against him should have concluded the very moment the trial court entered a judgment of acquittal and he should have been discharged. Defendant concedes the trial court entered a judgment of acquittal on the felony murder charge based on what is no longer a correct interpretation of the law - that the State was required to prove multiple acts to defeat the merger doctrine. Similarly, the trial court found the State could not prove aggravated child abuse because the State could only prove one act and thus it merged into second-degree murder. Defendant argues the trial court's ruling and subsequent instructions to the jury on the charge of second-degree murder effectively acquitted him of aggravated child abuse as well. Defendant contends that under the double-jeopardy clause, his acquittal of first-degree felony murder and his acquittal of aggravated child abuse demanded immediate cessation of all the proceedings. He argues that under the holding of *Mars v. Mounts*, 895 F.2d 1348 (11th Cir. 1990), he could not be recharged under the new theory of second-degree murder after he had been acquitted of first-degree felony murder and aggravated child abuse because the second-degree murder charge alleged the same murder of the same victim on the same date.

After Defendant was granted the judgment of acquittal, the State filed an Information charging him with second-degree murder. He argues this was a separate and new offense and included for the first time the element of a depraved mind. Defendant contends that the filing of the Information after the close of all evidence was a substantive amendment of the charging document. Relying on *State v. Thomas*, 714 So. 2d 626 (Fla. 5th DCA 1998), Defendant argues such a substantive amendment of a charging document after the jury was sworn was a violation of double jeopardy. Defendant maintains that the situation is even more egregious because the Information was entered after the State had presented its evidence and the defense had closed its case-in-chief. He asserts that, during trial, he had no idea he was defending himself against the depraved mind element. Defendant contends the charge of second-degree murder afforded the State with an impermissible opportunity to try him a second time on the same offense after he had been acquitted on the felony murder charge.

The Defendant's contention that he was acquitted of both charges is incorrect. This Court found the State could only prove one blow and, therefore, acquitted him of the first-degree felony murder charge. As this Court discussed above, it finds the State adequately pled counts IV and III to put the Defendant on notice that he may have to defend on the charge of second-degree murder. Thus, it properly considered the permissive lesser included offense of second-degree murder. Florida Rule of Criminal Procedure 3.490 provides:

> If the indictment or information charges an offense divided into degrees, the jury may find the defendant guilty of the offense charged or any lesser degrees supported by the evidence.

Florida Rule of Criminal Procedure 3.510 provides:

> On an indictment or information on which the defendant is to be tried for any offense the jury may convict the defendant of:
>
> *****
>
> (b) any offense that as a matter of law is a necessarily included offense or a lesser included offense of the offense charged in the indictment or information and is supported by the evidence. The judge shall not instruct on any lesser included offense as to which there is no evidence.

This Court did not acquit the Defendant of aggravated child abuse but merged that count with the second-degree murder charge. Merger and acquittal are not the same.

Contrary to the Defendant's assertion, the State did not file a new and separate offense when it prepared the "dummy" Information. At the evidentiary hearing, Mr. Gross testified that he prepared the Information so the jury could consider it when they went to deliberate. He stated the "dummy" Information was meant to be an aid for the jury and they always sent an information or indictment back with the jury when they deliberated. Florida Rule of Criminal Procedure 3.400(a)(1) specifically allows the trial court to take to the jury room a copy of the charges against the Defendant. The Information was not a substantive amendment but simply a statement of the charge against the Defendant. Thus, this issue is DENIED.

(Doc. 11-21 at 65-67). Petitioner appealed. (Doc. 11-22 at 34-45). The State filed an

Answer Brief in opposition. (Doc. 11-22 at 54-78). Petitioner filed a Reply Brief. (Doc.

11-22 at 80-89). The Fifth DCA *per curiam* affirmed. (Doc. 11-22 at 91). Mandate issued on October 10, 2016. (Doc. 11-22 at 93).

The Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb ...." U.S. Const. amend. V.[5] The courts have applied double jeopardy protection in three broad categories of cases: (1) successive prosecution for the same offense after acquittal; (2) successive prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). However, the Double Jeopardy Clause protects defendants against *successive* prosecutions, not *simultaneous* ones. *United States v. Farmer,* 923 F.2d 1557, 1563 (11th Cir. 1991). An "acquittal" is a decision by a court or a jury in favor of the defendant that "'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Smith v. Massachusetts,* 543 U.S. 462, 468 (2005) (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977)).

The trial court explained his ruling on Petitioner's motion for judgment of acquittal and the subsequent instructions regarding second degree murder:

> At this time I'm going to grant the Motion for Judgment of Acquittal on the first degree felony murder. The jury will be able to consider second degree murder and child abuse.

(Doc. 11-9 at 80).

---

[5] The Double Jeopardy Clause of the Fifth Amendment applies to the State through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969).

> As far as that goes, do you want me to instruct the jury that the Court has determined as a matter of law they're only going to be able to consider second degree murder and any lesser included offenses of second degree murder?

(Doc. 11-9 at 81).

> Here are my plans. I am going to instruct the jury that I have ruled that as a matter of law that they will not be considering first degree felony murder or aggravated child abuse, and they should disregard any instructions or the reading of the indictment as to first degree felony murder and aggravated child abuse, and that they will only be able to consider second degree murder and the lessers of second degree murder.

(Doc. 11-9 at 82).

Petitioner argues that the state court's rejection of his double jeopardy claim is contrary to and an unreasonable application of the Supreme Court's decision in *Evans v. Michigan*, 568 U.S. 313 (2013). He claims *Evans* clearly establishes that "an 'acquittal' includes 'a ruling by the court that the evidence is insufficient to convict,' a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relates to the ultimate question of guilt or innocence.'" *Id.* at 319 (quoting *United States v. Scott*, 437 U.S. 82, 91, 98 and n. 11 (1978)). However, Petitioner's reliance on *Evans* is misplaced. The Supreme Court found that a defendant's retrial following an acquittal (even if an erroneous acquittal) is barred by double jeopardy. *Evans*, 568 U.S. at 324. The trial court acquitted Petitioner of first degree felony murder and aggravated child abuse, but not second degree murder.

The state court's findings and conclusions regarding this claim were reasonable, in accord with, and not contrary to clearly established Federal law, as determined by

the Supreme Court of the United States; and were also reasonable, not unreasonable, in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).

## C. Ground Two

Petitioner states that his conviction for second degree murder is void because the state court deprived him of due process. (Doc. 2 at 19-21). He claims that it was a violation of his right to due process to charge him a new offense, containing a new element, in a new Information that was filed after the close of evidence, without giving him an opportunity to offer evidence in opposition to the charge.

Petitioner first raised this claim on direct appeal. (Doc. 11-10 at 116-24). The State filed an Answer Brief in opposition. (Doc. 11-10 at 170-72; Doc. 11-11 at 1-2). Petitioner then filed Reply Brief. (Doc. 11-11 at 22-26). Oral arguments were held. (Doc. 11-11 at 157-82). The Fifth DCA *per curiam* affirmed. (Doc. 11-11 at 137). Petitioner filed a motion for rehearing and motion for written opinion. (Doc. 11-11 at 139-82). The motions were denied. (Doc. 11-11 at 184). Petitioner then raised this issue in his Rule 3.850 motion. (Doc. 11-12 at 11-15). The State responded in opposition. (Doc. 11-13 at 74-82; Doc. 11-14 at 1-4). Petitioner replied. (Doc. 11-18 at 39-46). An evidentiary hearing was held. (Doc. 11-20 at 68-101; Doc. 11-21 at 1-51). The State (Doc. 11-18 at 48-54; Doc. 11-19 at 1-19) and Petitioner (Doc. 11-19 at 21-79; Doc. 11-20 at 1-66) filed written arguments after the hearing. The state court denied this claim:

In issue III, the Defendant argues his conviction for second-degree murder is void because it was entered in violation of the due process clause. Defendant maintains it was fundamental error and a manifest injustice to convict him of a crime that was not charged by the state, i.e., second- degree murder. He maintains the Indictment does not contain an allegation of a depraved mind. Defendant contends the original Indictment did not put him on notice that he was required to defend against the element of a depraved mind and this amounted to a denial of due process.

Moreover, he argues the trial court erred by allowing the "constructive amendment" of the original Indictment. Defendant argues that second-degree murder is a permissive lesser included offense of felony murder and, under the indictment here, it is not a permissive lesser included offense. He concludes the second-degree murder charge was a new and different charge. Defendant argues the court's instruction to the jury was an impermissible, constructive amendment of the Indictment. He maintains these errors are fundamental errors because they reach down to the validity of the trial.

As noted above, this Court disagrees with the Defendant' s analysis and finds the Indictment provided sufficient notice to the Defendant he might have to defend against the crime of second-degree murder. More specifically, the Indictment contained sufficient allegations of the element of a depraved mind. Thus, this Court concludes the Defendant was not denied due process. Moreover, because the second-degree murder charge was not a new and separate charge, there was no constructive amendment of the Indictment and this Court's instruction to the jury was proper. Thus, issue III is DENIED.

(Doc. 11-21 at 67-68). Petitioner moved for rehearing. (Doc. 11-21 at 71-79). The state

court denied the motion:

THIS CAUSE came before the Court upon the Defendant's Motion for Rehearing. The Court has considered the Motion, the case file, the testimony at the evidentiary hearing, argument of counsel and relevant legal authority.

The Defendant argues this Court erred in finding second degree murder was a permissive lesser included offense under the facts of this case. In addressing the Defendant's claims, this Court noted one of the purposes of an indictment or information is to fairly apprise the Defendant of the offense with which he is charged. *Leeman v. State*, 357 So.2d 703, 705 (Fla. 1978). This Court found that the Indictment for Count IV specifically incorporated the charge of aggravated child abuse

into the count. In examining the issue, this Court found the incorporation of the aggravated child abuse charge (Count III) into the charge of felony murder (Count IV) put the Defendant on notice he might have to defend against the permissive lesser included charge of second degree murder. By utilizing the wording alleging the Defendant maliciously (i.e., intentionally, wrongfully and without legal excuse) punished Blake Rupe by inflicting severe trauma to his head, the Indictment sufficiently alleged the Defendant acted with ill will, hatred, spite, or evil intent. This Court concluded that under the circumstances of this case, second degree murder is a permissive lesser included offense of count IV and, therefore, counsel was not deficient for failing to object to the charge being submitted to the jury. This Court affirms its original Order Denying the Defendant' s Verified Motion for Post-Conviction Relief.

(Doc. 11-22 at 1-2). Petitioner appealed and the Fifth DCA *per curiam* affirmed. (Doc. 11-22 at 91).

Petitioner relies on *Cole v. Arkansas*, 333 U.S. 196 (1948) to support his claim that he was denied due process. (Doc. 2 at 19-20). *Cole* instructs that "[n]o principle of procedural due process is more clearly established than the notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Id*. at 201. However, in *Lopez v. Smith*, the Supreme Court classified *Cole* as an "older [case] that [stands] for nothing more than the general proposition that a defendant must have adequate notice of the charges against him." *Lopez v. Smith*, 574 U.S. 1, 5 (2014).

A conviction for second-degree murder in Florida requires that the defendant kill "by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design." Fla. Stat. § 782.04(2). The Florida Supreme Court has defined an "act imminently dangerous to

another and evincing a depraved mind" as "an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." *Montgomery,* 39 So. 3d at 255–56 (quoting *Bellamy v. State,* 977 So. 2d 682, 683 (Fla. 2d DCA 2008)).

Maliciously is defined as "wrongfully, intentionally, and without legal excuse." Section 827.03(c), Fla. Stat. (2007). Florida courts have equated depravity of mind required for second-degree murder with malice in the commonly understood sense of "ill will, hatred, spite, or evil intent." *Ramsey v. State*, 154 So. 855, 856 (Fla. 1934); *Turner v. State*, 298 So. 2d 559, 560 (Fla. 3d DCA 1974); *Aquilera v. State*, 975 So. 2d 1270, 1273 (Fla. 3d DCA 2008); *Manuel v. State*, 344 So. 2d 1317, 1319 (Fla. 2d DCA 1977).

Count IV of the Indictment charged Petitioner with Murder in the First Degree – Felony Murder:

> …on or about the 15th day of December … two thousand-eight, did unlawfully, while engaged in the perpetration of a certain felony, to-wit: Aggravated Child Abuse,[6] kill BLAKE RUPE, a human being who at that time was under the age of 18, by inflicting blunt trauma to his head, thereby causing his death, in violation of Section 782.04(1)(a)2, Florida Statute

---

[6] Count III charged Petitioner with Aggravated Child Abuse:
on or about the 15 day of December 2008, did maliciously punish a child named BLAKE RUPE, during which DAVID J TATARA willfully committed child abuse upon by inflicting severe trauma to his head, thereby causing BLAKE RUPE to suffer great bodily harm, in violation of Sections 827.03(2)(b) and (c), Florida Statutes

(Doc. 11-1 at 12).

(Doc. 11-1 at 13). Second degree murder, while not a necessary lesser included offense, is a permissive lesser included offense of first degree felony murder. The state court found that because Count IV incorporated the charge of aggravated child abuse as the underlying felony, the elements of the crime of aggravated child abuse[7] are part of Count IV. *See* Doc. 11-21 at 64.

Because Petitioner was charged with causing Blake Rupe's death by maliciously punishing him by willfully committing child abuse by inflicting severe trauma to his head, thereby causing the victim to suffer great bodily harm, he was provided "adequate notice of the charge[ ]" of second degree murder. *Lopez*, 574 U.S. at 5. Furthermore, during the discussion of the jury instructions and prior to the close of evidence, second degree murder was presented as a lesser included offense and as an alternative if Petitioner was acquitted of the aggravated child abuse count, either by the Court or the jury. *See* Doc. 11-8 at 38-39, 43-49, 54-55; *see also* Doc. 11-6 at 78 (While presenting argument against Petitioner's initial motion for judgment of acquittal, the prosecutor claimed that if aggravated child abuse count was legally prohibited, then the felony murder charge would be reduced to second degree murder.)

---

[7]Aggravated child abuse is defined as occurring when a person (1) commits aggravated battery on a child; (2) willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or (3) knowingly or willfully abuses a child and in doing so causes great bodily harm, permanent disfigurement to the child. Fla. Stat. § 827.03(1)(a) (2007).

The state court's findings and conclusions regarding this claim were reasonable, in accord with, and not contrary to clearly established Federal law, as determined by the Supreme Court of the United States; and were also reasonable, not unreasonable, in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).

## IV.   CONCLUSION

For the reasons stated above, the Court finds that Petitioner's petition for writ of habeas (Doc. 1) is without merit and, thus, dismisses the petition with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability and leave to appeal in forma pauperis are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (internal citation and quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Petitioner has not made the requisite

showing in these circumstances. Because Petitioner is not entitled to a certificate of

appealability, he is not entitled to appeal in forma pauperis at this time.

**DONE AND ORDERED** at Tampa, Florida, on January 16, 2020.


*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO**</u>:
Counsel of Record and Petitioner, *pro se*